

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JAMES M. LEVERETT, | § | Case No. 06-41439 |
| | § | (Chapter 13) |
| Debtor. | § | |

### MEMORANDUM OPINION AND ORDER
### SUSTAINING DEBTOR'S OBJECTION TO CLAIM NO. 7

The Claimant, B-Line, LLC ("B-Line"), asserts an unsecured claim against James M. Leverett (the "Debtor") in the amount of $9,184.78. The Debtor objects to the allowance of B-Line's claim. This Court has jurisdiction to consider the objection to B-Line's claim pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a), and the Court may enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

### I. BACKGROUND

The Debtor filed a petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on September 1, 2006. The Debtor's "Schedule F – Creditors Holding Unsecured Nonpriority Claims" ("Schedule F") included two liquidated, undisputed credit card debts owed to Providian. In particular, the Debtor listed $6,962 owed to Providian for the credit card account ending in the numbers 8092, and $3,638 owed to Providian for the credit card account ending in the numbers 9642, for a total debt to Providian of $10,600.

On October 5, 2006, B-Line filed an unsecured claim against the Debtor in the amount of $9,184.78 for the credit card account ending in the numbers 8092, which was

assigned Claim No. 7 by the Court.[1]  B-Line described itself on the claim form as "B-Line, LLC/Atlantic Credit Finance/Providian."  In support of its claim, B-Line attached a one-page document entitled "Account Summary" that identified the Debtor, the Debtor's social security number, the Debtor's address, the balance due, the original creditor, Providian, and the account number.  No account statements, transaction history or credit card agreement were attached to the proof of claim form.

On June 14, 2007, the Debtor objected to the allowance of Claim No. 7.  The Debtor asserted in his objection that he was "not liable to this creditor or any other entity pertaining to the proof of claim."  The Debtor further objected that there was "no writing to support" Claim No. 7 and that "the obligation of the Debtor to this creditor is zero."

B-Line responded to the Debtor's objection on June 26, 2007.  In its response, B-Line argued that failure to attach documents is not grounds for disallowance and that, even if the claim is not prima facie valid, it should be allowed in light of the Debtor's failure to present any evidence to rebut the assertions on the proof of claim form.  B-Line further argued that Rule 3001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") does not mandate that all supporting documents be attached to a claim and that requiring it to produce voluminous documents to establish its claim would interfere with the just, speedy and inexpensive determination of its disputed claim as required by Bankruptcy Rule 1001.

B-Line filed an amended Claim No. 7 on October 3, 2007.  In lieu of the one-page Account Summary, B-Line attached three pages of screen shots from its computer

---

[1] On October 9, 2006, CACH, LLC filed an unsecured claim against the Debtor in the amount of $4,834.68, which was assigned Claim No. 9 by the Court.  Claim No. 9 stated that the underlying credit card account originally belonged to Providian and that the original creditor account number ended in the numbers 9647.  CACH, LLC subsequently transferred Claim No. 9 to B-Line, and B-Line filed notice of the transfer on December 13, 2006.  Claim No. 9 was the subject of a separate objection by the Debtor.

system, which detail the information B-Line has regarding the alleged debt, and a copy of a one-page "Assignment of Accounts and Waiver of Notice of Transfer of Claims" executed by Atlantic Credit & Finance, Inc. ("Atlantic Credit") on September 29, 2006 (the "Assignment") pursuant to a "Bankruptcy Receivables Forward Flow Purchase Agreement." The Assignment refers to 312 consumer accounts "which are described on computer files furnished by Seller to Buyer in connection herewith …."

The Debtor filed the instant objection to B-Line's amended Claim No. 7 on October 12, 2007. The Debtor asserts in his amended objection that "he is not liable to this creditor" and that "there is no documentation or writing to support this claim." At the hearing on the Debtor's objection on October 17, 2007, the parties did not present any witnesses, and B-Line did not submit any additional documentation of its claim. The Court scheduled the Debtor's objection for a later ruling following the conclusion of the hearing.

## II. ANALYSIS

### A. The Claims Allowance Process

The Bankruptcy Code defines a claim as a "right to payment … or … right to an equitable remedy." 11 U.S.C. §101(5). A "proof of claim" is "a written statement setting forth a creditor's claim" and must "conform substantially to the appropriate Official Form." FED. R. BANKR. P. 3001(a). Except in Chapter 11 cases, in which certain scheduled claims are "deemed filed,"[2] a creditor desiring to receive distributions in a bankruptcy case must file a timely proof of claim. *See* 11 U.S.C. §501(a); FED. R. BANKR. P. 3002(a). Once filed, a proof of claim "is deemed allowed" unless a party in interest objects. *See* 11 U.S.C. §502(a).

---

[2] *See* 11 U.S.C. §1111(a); FED. R. BANKR. P. 3003(b)(1).

3

If an "objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim … as of the date of filing the petition, and shall allow such claim." 11 U.S.C. §502(b). The substantive basis for the allowance of a claim is governed by §§ 501 and 502 of the Bankruptcy Code. The procedure for obtaining a determination of whether a filed proof of claim may be allowed to share in the distribution of the bankruptcy estate is governed Bankruptcy Rule 3001, among others. As B-Line points out in its response to the Debtor's objection to Claim No. 7, the Bankruptcy Rules should be "construed to secure the just, speedy, and inexpensive determination" of any disputed claim. FED. R. BANKR. P. 1001.

## B. The Burden of Proof

The burden of proof for claims objections rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. *See, e.g., In re Woodmere Investors Limited Partnership,* 178 B.R. 346, 354-355 (Bankr. S.D. N.Y. 1995). The claimant satisfies this burden by complying with Bankruptcy Rule 3001 and Official Form 10, which together govern the form, content and required attachments for proofs of claim. *See* FED. R. BANKR. P. 3001(a). With respect to a claim based on a "writing," such as a credit card agreement, Bankruptcy Rule 3001(c) requires that claimants must attach the original or duplicate of that writing to the proof of claim unless it has been lost or destroyed, in which case a statement of the circumstances of the loss must be filed with the claim. Official Form 10, complementing Bankruptcy Rule 3001, instructs claimants to attach copies of supporting documents or, if voluminous, a summary. Official Form 10 further requires the claimant to disclose whether the claim

includes "any interest or other charges in addition to the principal amount of the claim," and if so, to attach an "itemized statement of all interest or additional charges."

A proof of claim executed and filed in accordance with the requirements of Bankruptcy Rule 3001 and Official Form 10 constitutes "prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3002(f).  Bankruptcy Rule 3001(f) permits the proof of claim itself to act like a verified complaint and have an independent evidentiary effect in a hearing on an objection to the claim.  *E.g., In re Cluff,* 313 B.R. 323, 340-43 (Bankr. D. Utah 2004); *Garner v. Shier (In re Garner)*, 246 B.R. 617, 622 (9th Cir. BAP 2000).  Thus, a claimant who has complied with Bankruptcy Rule 3001 and Official Form 10 may refrain from presenting additional documentation at the hearing on the objection.  *See, e.g., In re Sandifer,* 318 B.R. 609, 611 (Bankr. M.D. Fla. 2004).  The claimant will prevail unless the objecting party produces evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.  *E.g., Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2nd Cir. BAP 2000).  If the claim is thus rebutted, then whichever party would have the burden of proof respecting the claim outside of bankruptcy bears that same burden in bankruptcy.  *Raleigh v. Ill. Dep't of Revenue,* 530 U.S. 15, 26 (2000); *In re Promedco of Los Cruces,* 275 B.R. 499, 503 (Bankr. N.D. Tex. 2002).

## C. Debtor's Objections B-Line's Claim No. 7

In this case, B-Line's amended Claim No. 7 is made on a properly executed proof of claim form.  B-Line identifies its claim as an unsecured claim based on a credit card,

5

identifies a credit card account ending in the numbers 8092 and lists Providian as one of the entities to whom the Debtor owes or owed money. B-Line has attached a copy of a blanket assignment it received from Atlantic Credit as well as several pages of screen shots from its computer system. The screen shots primarily contain information regarding the Debtor's bankruptcy case, such as trustee information, attorney information and proof of claim information. In addition, the screen shots identify an account ending in the numbers 8092 and a "related account" from Providian ending in the same numbers. The "current balance" is shown as $9,184.78. Atlantic Credit is listed as the "client" with a "placement load date" of October 3, 2006, a "placement balance" of $9,184.78 and a "placement open date" of March 30, 1999.

In his objection to B-Line's amended Claim No. 7, the Debtor does not dispute that he owes a debt to Providian. The Debtor, however, denies that he is liable or owes any debt to B-Line, and he asserts that B-Line lacks any writing or other documentation to support its claim against him. The Debtor's objection based upon insufficient documentation proving that B-Line is the holder of Providian's claim is a defense that would be available to the Debtor in a suit on the claim and is, therefore, a valid basis for disallowance of a claim under §502(b)(1) of the Bankruptcy Code. *E.g., In re Taylor*, 363 B.R. 303, 309 (Bankr. M.D. Fla. 2007); *In re Tran,* 351 B.R. 440, 444 (Bankr. S.D. Tex. 2006), *aff'd,* 369 B.R. 312 (S.D. Tex. 2007). Although the Debtor did not attach any evidence to his objection to B-Line's amended claim, such as an affidavit, the objection was signed by his counsel under penalty of Bankruptcy Rule 9011. *Cf: In re Cluff*, 313 B.R. at 339 fn 59 (comparing Bankruptcy Rule 9011 with the penalty of perjury statement required in a proof of claim); *In re Brooks-Hamilton,* 329 B.R. 270 (9th

6

Cir. BAP 2005) (affirming sanctions imposed on attorney under Bankruptcy Rule 9011 for frivolous arguments raised in connection with debtor's objection to a claim).

Thus, the Debtor's objection presents several issues for the Court to decide. The Court must first determine whether Claim No. 7 is entitled to prima facie validity. If so, then the Court must determine whether the Debtor met his burden to produce evidence rebutting the claim. Finally, if the Debtor met his burden, the Court must determine whether B-Line has established, under relevant state law, that the Debtor is liable to B-Line for the debt represented by Claim No. 7.

### 1. Prima Facie Validity of Claim No. 7

"The purpose of the rules regarding claims is to require creditors to provide sufficient information so that a debtor may identify the creditor and match the creditor and the amount of the claim with the claims scheduled by the debtor." *In re Hughes,* 313 B.R. 205, 212 (Bankr. E.D. Mich. 2004). If a claimant fails to provide sufficient information regarding either its identity or the amount of the claim, the debtor may object to the claim, and the claim will not be accorded prima facie validity at the hearing on the objection. *Id.* In other words, when a claimant fails to comply with Bankruptcy Rule 3001 and Official Form 10 by including all of the required information, the claimant cannot, in response to an objection, rest on its proof of claim and must instead come forward with sufficient evidence of the claim's validity and amount. *E.g., In re Stoecker,* 5 F.3d 1022, 1028 (7th Cir. 1993).

In the event the claimant is an assignee of a debtor's original credit card creditor, the claimant's initial obligation to establish its identity may be met by attaching "a signed copy of the assignment and sufficient information to identify the original credit card

account." *In re Hughes*, 313 B.R. at 212.  The bankruptcy court in *In re Armstrong*, 347 B.R. 581 (Bankr. N.D. Tex. 2006), identified two specific scenarios under which a transferee of a credit card debt may both establish prima facie validity and overcome a "lack of documentation" objection by the debtor: "(1) the creditor produces documentation of a 'blanket assignment' to itself of several accounts from a creditor listed as a creditor on the debtor's schedules, coupled with copies of the underling account documents with the debtor;" and "(2) the creditor produces documentation of a 'blanket assignment' to itself of several accounts from a creditor not listed on the debtor's schedules, but additional documents submitted with the assignment provided a basis to link the entity assigning the claim with an entity listed on the debtor's schedules[.]" *In re Armstrong*, 347 B.R. at 584.  In contrast, a proof of claim does not satisfy Bankruptcy Rule 3001(f), and the creditor must submit further evidence, where the "the creditor produces documentation of a 'blanket assignment' to itself of several accounts *from a creditor not listed on the debtor's schedules*, and the additional documents submitted with the assignment do not provided a basis to link the entity assigning the claim with an entity listed on the debtor's schedules." *Id.*  (emphasis added).

However, a signed copy of the assignment is not always necessary.  A proof of claim filed by the assignee of a credit card debt may be entitled to prima facie validity if it includes or attaches documentary or other evidence pertaining to how it acquired the claim and showing that it is the current holder of the claim.  *See, e.g., In re Joslin*, 344 B.R. 146 (Bankr. D. Kan. 2006) (assignment instrument not required).  A bankruptcy court also may infer that the claimant holds the claim, where, for example, (i) the original credit card creditor was included in the debtor's schedules and received notice of the

8

bankruptcy, (ii) the amount asserted is approximately the same as, or less than, the amount set forth in the schedules, (iii) the original credit card creditor did not file a proof of claim, and (iv) an entity claiming to be an assignee of the original credit card creditor has signed and filed a proof of claim under penalty which is clearly based on the original creditor's claim. *See, e.g., In re Burkett,* 329 B.R. 820, 829 (Bankr. S.D. Ohio 2005) ("[I]f a proof of claim lacking proper attachments does not correlate to a debt scheduled by the debtor, or aspects of the claim differ from the scheduled debt, this may give rise to a valid objection by the debtor or trustee for lack of verification of ownership and/or the amount of the claim.").

Here, in determining whether B-Line met its burden to establish its ownership of Claim No. 7, the Court first considered the allegations on the face of B-Line's amended proof of claim. A proof of claim is more than a mere pleading -- although a proof of claim is not signed under penalty of perjury, it is signed under penalty of up to $500,000 or up to five years in prison. *See* 18 U.S.C. §157.[3] In this case, however, B-Line's proof of claim is conspicuously incomplete. Paragraph 4 of the Official Form instructs claimants to "Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement." Although B-Line states that the basis of the claim is "credit card" debt, B-Line has not checked the box in Paragraph 4 indicating that a portion of the claim includes interest, nor has it separately itemized or listed the interest rate on the documents attached to its proof of claim. In light of the

---

[3] The official proof of claim form (Official Form 10) contains a simple signature block, with no language requiring that the form be signed under oath or penalty of perjury. As noted in *Vines v. IRS (In re Vines),* 200 B.R. 940, 948 (M.D. Fla. 1996), the former Bankruptcy Act of 1898 "originally contained a requirement that a proof of claim be under oath, but the requirement was deleted in 1960 by Pub.L. No. 86-519." *Id.* Instead, Congress chose to protect the integrity of the bankruptcy process by providing in 18 U.S.C. § 157 for direct prosecution of a false claim without requiring that the claim be signed under oath or penalty of perjury.

absence of a properly completed proof of claim form, the fact that the form refers to Providian and an account number belonging to Providian is not credible evidence of B-Line's ownership of the claim.

With respect to the computer screen shots and the Assignment attached to B-Line's amended Claim No. 7, these additional documents do not provide a basis to link the entity assigning the claim with an entity listed on the Debtor's schedules.   No evidence of an assignment of the Debtor's account from the original creditor, Providian, to the intermediate creditor, Atlantic Credit, was attached to the amended claim or introduced at the hearing on the Debtor's objection to Claim No. 7.   Moreover, the Assignment from Atlantic Credit to B-Line does not specifically reference the Debtor or the Debtor's account with Providian -- the Assignment simply reflects that, after the Debtor filed for bankruptcy, Atlantic Credit assigned 312 accounts to B-Line pursuant to a "Bankruptcy Receivables Forward Flow Purchase Agreement" dated June 1, 2004 and amended November 1, 2005.   B-Line failed to attach any credible evidence that one of these accounts included the Debtor's Providian account ending in the numbers 8092.

Notably, the amount of B-Line's alleged claim is significantly higher than the amount listed in the Debtor's Schedule F.   The documents attached to B-Line's claim contain no historical information regarding the Debtor's account with Providian that might explain the difference between the scheduled and claimed amounts, such as the interest rate, the first payment due date or the last payment made by the Debtor. Moreover, the Assignment and three pages of screen shots attached to B-Line's amended are not business records of the Debtor's credit card account with Providian within the

meaning of Federal Rule of Evidence 803(6).   The Court, therefore, concludes that B-Line's claim is not entitled to prima facie validity under Bankruptcy Rule 3001(f).

## 2. Substantive Liability

The Court's conclusion that B-Line's claim lacks prima facie validity does not end the inquiry, because lack of prima facie validity in the face of a valid objection simply means that the claimant must submit evidence establishing its right to payment from the debtor.   *See, e.g., In re Fidelity Holding Co., Ltd.,* 837 F.2d 696, 698 (5th Cir. 1988).   "Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh v. Illinois Dept. of Revenue,* 530 U.S. at 20.   Thus, the Court must review B-Line's claim in light of applicable non-bankruptcy law as well as Bankruptcy Rule 3001 to determine whether B-Line has ultimately carried its burdens of proof and persuasion.

A credit card agreement is required to be in writing pursuant to the Truth-in-Lending Act,[4] and collection of the amount due under a credit card agreement is treated as a claim for breach of a written contract under Texas law.   *Tully v. Citibank (South Dakota), N.A.,* 173 S.W.3d 212, 215-220 (Tex. App. - Texarkana 2005).   The essential elements in a suit for breach of contract are: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach.   *Hussong v. Schwan's Sales Enterprises, Inc.,* 896 S.W.2d 320, 326 (Tex. App.- Houston (1st Dist.) 1995). A credit card creditor has the burden at trial to establish the existence of the

---

[4] The Truth in Lending Act ("TILA"), enacted in 1968, is codified at 15 U.S.C.A. §§1601 *et seq.* and applies to most consumer credit transactions.

11

contract and compliance with its provisions. *Preston State Bank v. Jordan,* 692 S.W.2d 740, 743-744 (Tex. App. - Fort Worth 1985).  The creditor fails to establish a prima facie case if it fails to introduce the contract between itself and the debtor or the terms and conditions thereof. *Id.   See also, e.g., Providian Nat'l Bank v. Ebarb,* 180 S.W.3d 898 (Tex. App. – Beaumont 2005).

In the context of a bankruptcy claims proceeding, the claimant may establish a claim for liability based on a credit card agreement by attaching the agreement itself to the proof of claim.  Alternatively, "an affidavit of the custodian of the creditor's records, whose duties include having custody and control of records related to the debtor's account which purports to: (1) authenticate the credit card agreement documents and monthly statements; and (2) state the account balance due and unpaid, may be sufficient to prove the formation or the terms of the agreement."  *In re Tran*, 351 B.R. at 447-448 (citing Texas authority).  Where one bank has purchased the account from another bank, for example, the custodian of the purchaser bank's records may testify about the predecessor bank's records in the purchaser's possession.  *Id.*  The attachment or filing of other business records, admissible under the hearsay exception provided in Federal Rule of Evidence 803(6), may also, in an appropriate case, establish a debt owing to a claimant. *In re Cluff*, 313 B.R. at 333; *In re Tran*, 351 B.R. at 446 fn.1.  *See also, e.g., In re Heath*, 331 B.R. 424 (9th Cir. BAP 2005) (a proof of claim that is not factually disputed may also constitute some evidence of the claim).

Here, the Court provided B-Line with an opportunity to prove its claim by conducting a hearing on the Debtor's objection.  Rather than introduce additional evidence, B-Line rested on its amended proof of claim.  B-Line offered no witness to

establish the validity of its claim and, as discussed above, no affidavit supporting an assignment of the Providian account to Atlantic Credit or supporting the amount the B-Line claims is owed.  Because the evidence attached to B-Line's claim was deficient, and because B-Line offered no further evidence to support its claim at the hearing, the Court finds that B-Line has not met its burden of proof and that the allowance of its claim should be denied.

### 3. Amount of the Claim

Even if the Court were to infer that B-Line stands in the shoes of Providian with respect to the liability alleged in Claim No. 7 -- which the Court declines to do for the reasons previously discussed -- B-Line has not met its burden of proof.  For parties to have sufficient information to determine the basis and accuracy of a claim based on a credit card agreement, the claim and any documents or summary statement attached to the claim must disclose, at a minimum --

> (1) the name and account number of the debtor or debtors;
> (2) the amount of the debt;
> (3) be in the form of a business record or other reliable format; and
> (4) if the claim includes charges such as interest, late fees and attorney's fees, the summary must include a statement giving a breakdown of those elements.

*In re Armstrong*, 320 B.R. at 105 (citing *In re Kemmer,* 315 B.R. 706, 715 (Bankr. E.D. Tenn. 2004); *In re Cluff,* 313 B.R. at 335).  Most of this information can be found on the monthly credit card statements provided to the account debtor prior to bankruptcy.  *See id.* (citing *In re Kemmer,* 315 B.R. at 715-716; *In re Cluff,* 313 B.R. at 336-338; *In re Henry,* 311 B.R. 813, 817-818 (Bankr. W.D. Wash. 2004)).

Here, Claim No. 7, as amended, alleges that the Debtor owes $9,184.78 for the account ending in the numbers 8092.  The Debtor does not seek to contradict his

Schedule F or dispute that he owes a debt to Providian for this account in his objection to B-Line's amended claim – indeed, "statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions." *Larson v. Groos Bank,* 204 B.R. 500, 502 (W.D. Tex. 1996). The amount claimed by B-Line, however, is significantly more than the $6,962 debt to Providian for this account listed in the Debtor's Schedule F. The documents attached to B-Line's amended claim do not include any credit card statements and, as previously discussed, are not in the form of a business record of B-Line or other reliable format. At the hearing on the objection to its claim, B-Line provided no additional evidence supporting the amount of its alleged claim, such as an itemization of principal, interest and other charges. B-Line likewise failed to submit evidence that would show that it has *any* historical information regarding the Debtor's account with Providian or the presumed transfer of that account to Atlantic Credit. *See In re Wingerter,* 376 B.R. 221 (Bankr. N.D. Ohio 2007) (discussing a claimant's obligation to possess sufficient information to complete Official Form 10 and thereby comply with Bankruptcy Rule 9011).

Under these circumstances, even if the Court were to infer that B-Line is the successor in interest to Providian with respect to the credit card account ending in 8092, B-Line failed to establish that it holds a claim against the Debtor in the amount of $9,184.78. Although the Debtor's bankruptcy schedules may be construed as a judicial admission of a debt in the amount of $6,972 for the Providian credit card account ending in 8092, B-Line provided no credible evidence of any debt in excess of this amount. B-Line appears to have filed Claim No. 7 with no information regarding the underlying account other than the identity of the Debtor, the name of the original lender, the original

14

account number, and an alleged amount owed.  As the bankruptcy court in *Wingerter* recently admonished B-Line:

> The drafters of Official Form 10 had good reason to require claimants who are generally in the position of having historical information to communicate such information succinctly and accurately on that form. If B-Line chose to accept assignments of claims without obtaining adequate historical information, that is a problem of its own making. Since B-Line operates wholly within the bankruptcy arena, it should be expected to require its assignors to provide sufficient information to complete Official Form 10 and thus to comply with Rule 9011.

*In re Wingerter,* 376 B.R. at 233.

### III. CONCLUSION

The Court is sustaining the Debtor's objection, not because of a general documentation insufficiency under Bankruptcy Rule 3001(c), but because B-Line did not establish it holds a legally enforceable agreement supporting the claim.  *In re Taylor*, 363 B.R. 303, 310-11 (Bankr. M.D. Fla. 2007).  Even if the Court were to infer that B-Line holds the underlying Providian account based on the references in its proof of claim to Providian and Providian's account number, B-Line failed to sustain its burden of proof to the extent its claim exceeds the amount listed in the Debtor's Schedule F for the Providian credit card account ending in 8092.  B-Line's claim is for a significantly larger amount than the admitted debt to Providian, and B-Line failed to provide *any* credible evidence supporting the total amount of its alleged claim.

For the foregoing reasons, it is

**ORDERED** that the Debtor's objection to Claim No. 7 is **SUSTAINED** and that Claim No. 7 is hereby **DISALLOWED** in its entirety.

Signed on 12/5/2007

*Brenda T. Rhoades*                SR

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE